UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
RICKY N. EAVES,                         )
        Plaintiff,                      )
                                        )
                                        )
v.                                      )   CIVIL ACTION
                                        )   NO. 12-10336-TSH
THE CITY OF WORCESTER,                  )
MICHAEL V. O'BRIEN, Worcester City Manager, )
GARY J. GEMME, Worcester Chief of Police,   )
JESUS CANDELARIA and                    )
THOMAS C. DUFFY,                        )
        Defendants.                     )
_____)

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS (Docket No. 4)**
**July 9, 2012**

**HILLMAN, D.J.**

### Nature of the Case

Ricky N. Eaves filed suit against the City of Worcester ("City"), Worcester City Manager, Michael V. O'Brien (the "City Manager"), Worcester Police Chief Gary J. Gemme, and Worcester Police Officers Jesus Candelaria and Thomas C. Duffy pursuant to 42 U.S.C. §1983 as the result of his alleged wrongful arrest, prosecution and incarceration.  Eaves has also asserted state common law tort claims against the Defendants for false arrest and malicious prosecution.  The Defendants have filed a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint in its entirety.

**Background**

The following relevant facts are taken from the Amended Complaint.

On February 25, 2009, Officer Candelaria reported that he was in a police cruiser patrolling the Kelly Square area of Worcester, Massachusetts when he received a dispatch regarding a suspicious vehicle on Goldwaithe Road. Officer Candelaria proceeded to Goldwaithe Road, but did not see the vehicle described in the dispatch. He then drove down Plantation Street and saw a vehicle matching the description in the dispatch pulling into a Shell gas station. Officer Candelaria activated his lights as the suspect vehicle came to a stop at one of the gas pumps. Officer Duffy arrived on the scene simultaneously. Officers Candelaria and Duffy exited their vehicles and approached the suspect car. Officer Candelaria asked the operator for identification. As the operator was looking for his identification, Officer Candelaria noticed a bunch of "glassine sandwich baggy knots" all over the floor. He also noticed a pregnant white female sitting in the rear passenger seat; she was moving around and the front of her pants were unbuttoned. She appeared be hiding something she retrieved from her handbag. Officer Candelaria observed a "white chunk" in a glassine bag protruding from the handbag. Officers Candelaria, Duffy and another officer on the scene, Officer Bishop, asked the occupants to exit the vehicle. Officer Candelaria conducted a safety pat down of Eaves—no weapons were found. Officer Candelaria found what appeared to be crack cocaine, a syringe and a pipe at the feet of the driver's seat and a stash of syringes and baggies on the passenger's side. Eaves and Cristina M. Page were arrested. Officer Candelaria wrote a police report which included the aforementioned account of Eaves's arrest.

In actuality, Page was driving the van and was stopped by Officer Duffy as she tried to back away from the gas pump. Eaves was the front seat passenger and it was Officer Duffy who

ordered him out of the front seat. Officer Duffy told Eaves to sit next to a couple of gas pumps. Other officers arrived to remove Page and the rear seat passenger, Kerrie Deasey. Officer Candelaria arrived after Eaves had already been removed from the vehicle and seated next to the gas pump. Warrantless searches of the vehicle and its occupants were conducted before Candelaria arrived; narcotics were found on Deasey, but not on Eaves or Page. No drugs were found in the front of the vehicle. Candelaria's arrival and initial interaction with Eaves were captured on videotape by security cameras at the gas station. After Candelaria arrived, he and Duffy spoke, Duffy was heard saying to Candelaria: "this is what we are going to do".

Eaves was on probation at the time of his arrest. He was found to have violated the terms of his probation, held on $5,000 bail and remained incarcerated from the date of his arrest until his trial on May 8, 2009. At trial, Officer Duffy admitted that Eaves was not the driver of the vehicle. He further testified that he had found crack cocaine on Eaves and had seen Eaves fiddling with a cocaine wrapper while seated in the passenger seat. Officer Duffy also testified that he had not seen the security camera videotape, but he had talked to fellow officers who had seen it, including Officer Candelaria. Officer Duffy said that he had not discussed the video in detail with Officer Candelaria, but that Officer Candelaria had told him that there were inconsistencies in his (Officer Candelaria's) report.

On the day of the hearing, the Commonwealth dropped the charges against Eaves. Eaves and an assistant district attorney co-signed an entry of nolle prosequi. Problems with the case were reported to the police liaison for the District Attorney's Office, the court and the Worcester Police Department.

Chief Gemme received copies of Officer Candelaria's police report and the security videotape from the gas station, but has taken no action against Officers Duffy and Candelaria. That is, he has not instituted an internal affairs investigation, nor has he disciplined the officers.

## **Standard Of Review**

In a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir.2007) (citing *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999)). In deciding a motion to dismiss, the Court may consider materials attached to or incorporated by reference in the complaint, or that are a part of the pleading itself. *Trans–Spec Truck Serv. v. Caterpillar,* 524 F.3d 315, 321 (1st Cir.2008). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). However, the Court need not consider "bald assertions [or] unsupportable conclusions." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 556, 129 S.Ct. 1937). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC,* 521 F.3d 76, 84 (1st Cir.2008) (quotations and original alterations omitted).

**Discussion**

The Defendants assert that the Amended Complaint should be dismissed because: (1) Eaves has failed to demonstrate that Officers Duffy and Candelaria violated his constitutional rights; (2) Officers Candelaria and Duffy are entitled to qualified immunity; and (3) Eaves has failed to state a cognizable claim against the City, Chief Gemme or the City Manager within the meaning of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978).  Eaves, on the other hand, argues that he has asserted sufficient facts to state a claim against each of the Defendants for violation of: his Fourth Amendment right to be free from unreasonable search and seizure and his common law right to be free from false arrest; and his due process rights under the Fifth and Fourteenth Amendments[1] and his common law right to be free of malicious prosecution. Eaves further argues that Officers Candelaria and Duffy are not entitled to qualified immunity.

*Eaves's Claims Against Officers Candelaria and Duffy and The Issue Of Qualified Immunity*

Defendants' motion to dismiss the claims against Officers Candelaria and Duffy for failure to state a claim and on the grounds of qualified immunity does not require a protracted discussion.  In support of their motion, the Defendants assert that the fact that a BOLO, *i.e.*, "be on the lookout" dispatch issued for a vehicle matching the vehicle in which Eaves was riding legitimized the vehicle stop and, ultimately, the arrest of Eaves and the search of his person and the vehicle.  However, the Defendants completely ignore that Eaves has asserted that Officers Candelaria and Duffy individually and/or conspiring together submitted false police reports or

---

[1] The Defendants have not raised the issue of whether Eaves has failed to state a claim under Section 1983 for violation of his *Fifth* Amendment right to be free from malicious prosecution.  Nonetheless, I will note that while the First Circuit has left open the question of whether a Fourth Amendment malicious prosecution claim lies under Section 1983, the Court has held that the due process clause of the Fifth Amendment " 'cannot serve to ground [a] federal malicious prosecution claim' ". *Williams v. City of Boston*, 771 F.Supp2d 190 (D.Mass. 2011)(citing *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001)).

5

otherwise gave false accounts of the events which took place at the Shell Station on February 25, 2009, which led to his arrest, incarceration and prosecution.  For purposes of Defendants' motion, the Court must accept those factual assertions as true.  While the BOLO may have justified the officers' stop of the vehicle, it does not in and of itself create probable cause for the arrest. Furthermore, while it is the case that the filing of a false police report in and of itself does not establish a constitutional violation, *see Landrigen v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980); *Diggs v. Mills*, Civ.Act. No. 10-11688-JLT, 2011 WL 3022257 (D.Mass. Jul. 21, 2011),  in this case,  Eaves has alleged that Officers Candelaria and Duffy lied about the underlying facts which would support a finding of probable cause to arrest him and/or search the vehicle in which he was a passenger.  Under these circumstance, Eaves has stated a claim for violation of his constitutional and common law rights.

Defendants also argue that the claims against Officers Candelaria and Duffy should be dismissed on qualified immunity grounds.  Qualified immunity protects public officials such as the police from liability under Section 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 816, 818, 102 S.Ct. 2727 (1982).  "The doctrine protects all state actors except 'the plainly incompetent [and] those who knowingly violate the law.' But despite its broad protective sweep, qualified immunity does not 'shield public officials who, from an objective standpoint, should have known that their conduct was unlawful.' " . *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011)(internal citations and citations to quoted cases omitted).

In order to determine whether a defendant is entitled to qualified immunity, the Court must determine whether a the plaintiff has established (1) a violation of his constitutional rights,

and (2) that the right violated was clearly established at the time of the alleged misconduct.  As to the latter prong, the Court must determine whether the "contours of the right would" have been sufficiently established such that " 'it would have been clear to an objectively reasonable official, situated similarly to [the defendants], that the actions take or omitted contravened the clearly established right'".  *Id.*, at 48 (citation to quoted case omitted, alteration in original).  Simply put, there can be no doubt that the standard for making a warrantless arrest was clearly established on February 25, 2009, and that Officers Candelaria and Duffy were aware that probable cause was required to effectuate such an arrest.  Furthermore, police officers in Officers Candelaria's and Duffy's position would have known that to falsify or misrepresent facts to create  probable cause would violate that clearly established right.  Therefore, the Court cannot at this time find that Officers Candelaria and Duffy are entitled to qualified immunity.

The Defendants argue that the search of the vehicle was lawful pursuant to the search incident to arrest exception to the warrant requirement.   Given that I have denied Defendants' motion to dismiss the Section 1983 false arrest claim, Eaves's Section 1983 unlawful search claim necessarily stands.  Likewise, Defendants  motion to dismiss Eaves's Section 1983 claim for malicious prosecution and his common law false arrest and malicious prosecution claims are denied.

*Eaves's  Claims Against The City, Chief Gemme And The City Manager*

To establish municipal liability, a plaintiff must show that "the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197 (1989); *Monell,* 436 U.S. at 694–95, 98 S.Ct. 2018. Thus, the plaintiff is required to demonstrate both the existence of a policy or custom and a "direct causal link" between that policy and the alleged constitutional

deprivation. *Harris,* 489 U.S. at 385, 109 S.Ct. 1197; *see also Monell,* 436 U.S. at 694, 98 S.Ct. 2018 (policy must be the "moving force [behind] the constitutional violation"); *Santiago v. Fenton,* 891 F.2d at 373, 381–82 (1st Cir. 1989). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* – U.S. –, –, 131 S.Ct. 1350, 1359 (2011).

To impose liability against the City [2] under *Monell* depends on whether Eaves can establish that the policy, custom and/or failure to train caused an injury that amounts to a constitutional violation.  Taking the facts asserted in the Amended Complaint as true, Eaves has at least stated a claim as to whether the history of the Worcester Police Department's and/or the City Manager's actions in response to complaints against its officers constitutes a custom or policy of deliberate indifference which resulted in a violation of his constitutional rights.  Nor can the Court conclusively find that Eaves has not alleged the existence of additional policies or customs which resulted in the violation of his constitutional rights.

As to the claims against Chief Gemme and the City Manager in their individual capacities, supervisory liability may not be based on a theory of *respondeat superior,* that is, an official cannot be held vicariously liable for the conduct of his subordinates—instead, such official can only be held liable on the basis of his own acts or omissions.  *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.  A supervisor may be held liable for a subordinate's acts where the subordinate's behavior resulted in a constitutional violation *and* the supervisor's "action or inaction was 'affirmatively linked' to the behavior in that it could characterized as 'supervisory encouragement, condonation acquiescence' or gross negligence amounting to 'deliberate

---

[2] Eaves's claims against Chief Gemme and the City Manager in their official capacities are treated as claims against the City.

indifference'". *Howe v. The Town of North Andover*, 784 F.Supp.2d 24, 29 (D.Mass. 2011). At this stage of the proceedings, Eaves has alleged sufficient facts to state a claim against Chief Gemme and the City Manager in their supervisory capacities and therefore, the Defendants motion to dismiss the claims against these Defendants is denied. However, the Court will note that Eaves's claims against the City Manager, in particular, survive by only the thinnest of margins.

## Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss (Docket No. 4) is DENIED.

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
DISTRICT JUDGE